# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

KIM D. ORMES,                    )
    Plaintiff,               )
                                 )
v.                               )          CAUSE NO.: 2:14-CV-199-PRC
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of the       )
Social Security Administration,  )
    Defendant.               )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kim D. Ormes on June 10, 2014, and a Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], filed on October 23, 2014. Plaintiff requests that the February 14, 2013 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed with an award of benefits or reversed and remanded for further proceedings. On January 30, 2015, the Commissioner filed a response, and Plaintiff filed a reply on March 2, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on February 3, 2011, alleging an onset date of August 1, 2007. The claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on December 7, 2012. In attendance were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. On January 28, 2013, Administrative Law Judge ("ALJ") Henry Kramzyk issued a written decision denying benefits, making the following findings:

    1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2007 through her date last insured of December 31, 2012.

3.      Through the date last insured, the claimant had the following severe impairments: diabetes mellitus, arthritic changes in the right shoulder and elbow, scoliotic degenerative changes in the lumbar spine, and mild lumbar radiculopathy.

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk about 6 hours in an 8 hour work day; and sit about 6 hours in an 8 hour work day. The claimant could never kneel, crawl, or climb ladders, ropes or scaffolds; but could occasionally climb ramps and stairs; balance, stoop, and crouch. The claimant needed to avoid concentrated exposure to hazards, such as unprotected heights; and could frequently use her right upper dominant extremity.

6.      Through the date last insured, the claimant was capable of performing past relevant work as a deli clerk and conveyor feeder. The work did not require the performance of work related activities precluded by the claimant's residual functional capacity.

7.      The claimant was born [in 1959] and was 48 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date. The claimant subsequently changed age category, to that of closely approaching advanced age, on the date last insured.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that

existed in significant numbers in the national economy that the claimant could have performed.

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2007, the alleged onset date, through December 31, 2012, the date last insured.

(AR 16-27).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, Commissioner F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is

not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In this appeal, Plaintiff argues that the ALJ erred by failing to (1) properly weigh the opinion of Plaintiff's treating physician; (2) explain how the evidence supported his determination that Plaintiff was capable of performing work at the light exertional level and in failing to assess the vocational impact of Plaintiff's fatigue and headaches; (3) obtain an updated medical opinion; (4) ascertain the functional limiting effects of Plaintiff's non-severe mental impairments; and (5) properly assess Plaintiff's credibility. The Court considers each in turn.

### A. Weight to Treating Physician Opinion

Plaintiff argues that the ALJ erred in evaluating the opinion of Plaintiff's treating physician, Kathryn H. Mulligan, MD. In a January 2013 "Lumbar Spine Medical Source Statement," Dr. Mulligan opined that Plaintiff could sit for one hour at a time, stand for two hours at a time, and stand and walk for a total of six hours in an eight-hour day. (AR 500). Dr. Mulligan further opined

that Plaintiff could occasionally lift less than ten pounds, that she could never climb ladders, and could occasionally twist, stoop, crouch, squat, or climb stairs. (AR 501).

The ALJ gave this opinion "some weight." (AR 25). In doing so, the ALJ noted Dr. Mulligan's diagnoses of type I diabetes, frequent hypoglycemia/syncope, and retinopathy and noted that Dr. Mulligan gave Plaintiff a fair diagnosis. The ALJ recognized that Dr. Mulligan was a treating physician and had met with Plaintiff on three occasions. The ALJ then described Dr. Mulligan's clinical findings of pain with reduced range of motion in the shoulders and elbows, and pain in the lower back with radiation to the legs, symptoms of chronic fatigue, and multiple joint complaints, especially in the right shoulder and elbow. The ALJ detailed Dr. Mulligan's assessment of Plaintiff's functional limitations. The ALJ concluded that the medical evidence *supports* the claimant's ability to stand and/or walk for 6 hours in an 8 hour work day with some limitation in the right upper extremity but that the limitation to sitting for one hour at a time is *not supported* by the objective evidence. (AR 25). In giving the opinion "some weight," the ALJ also reasoned that there was no evidence of diabetic retinopathy or chronic fatigue in the medical evidence.

> An ALJ must give the medical opinion of a treating doctor controlling weight as long
>
> as the treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 404.1527(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006);

SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875; *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013).

The factors listed in paragraphs (c)(2)(i) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. § 404.1527(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives good reasons. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schaaf*, 602 F.3d at 875; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

Plaintiff faults the ALJ for not evaluating Dr. Mulligan's opinion pursuant to the checklist of factors. In a broad sense, the Court disagrees. The ALJ noted that Dr. Mulligan was a treating physician and that Dr. Mulligan had seen Plaintiff on three occasions[1] and noted Dr. Mulligan's

---

[1] In a footnote to its brief, the Commissioner notes that the medical record contains notes from only one appointment with Dr. Mulligan on November 2, 2012. The Commissioner represents that, other than the x-ray tests on November 2, 2012, and the EMG on December 28, 2012, there is no record of any additional treatment with or examination by Dr. Mulligan. The Commissioner notes that Dr. Mulligan nevertheless reported that she had seen Plaintiff for "3 visits." (AR 499). However, the ALJ did not discount Dr. Mulligan's opinion because the record only contains one examination record. Therefore, this fact does not support the ALJ's credibility determination and, to the extent it

8

examination findings. The ALJ must *consider* the regulatory factors but is not required to explicitly discuss and weigh each factor in the written decision. *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting [the treating physician's] opinion, and its inconsistency with the rest of the record . . . . This is enough." (internal citations omitted)). Nevertheless, in this case, there are several factors not discussed by the ALJ that appear to support Dr. Mulligan's lifting and sitting limitations. The ALJ's failure to discuss these factors, the favorable evidence, and how the evidence affects the weight given to Dr. Mulligan's opinion requires remand.

First, Dr. Mulligan's opinion was consistent with the November 30, 2012 opinion provided by treating endocrinologist Dr. Julene Ricks-Ngwayah, who completed a "medical statement regarding diabetes for Social Security disability claim." (AR 583). Dr. Ngwayah indicated that Plaintiff has type 1 diabetes, brittle diabetes, and neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. *Id*. Dr. Ngwayah opined that Plaintiff can stand for fifteen minutes at one time, can sit for sixty minutes at one time, can occasionally lift five pounds, cannot lift any weight frequently, and can balance frequently. (AR 583). The ALJ did not discuss the consistency of Dr. Ngwayah and Dr. Mulligan's opinions.

In his recitation of the medical evidence, the ALJ noted Dr. Mulligan's examination findings in November 2012 that Plaintiff demonstrated an "incomplete extension of both elbows, with tenderness to palpation, but no redness or swelling." (AR 22); (AR 466). However, three pages

---

is an argument by the Commissioner, it is not considered by the Court. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010).

later, in weighing Dr. Mulligan's opinion, the ALJ did not discuss how Dr. Mulligan's physical examination findings, including her observation that Plaintiff's bilateral elbows were tender to palpation and could not be fully extended, affect the weight given to the opinion. These examination findings appear to support Dr. Mulligan's opinion.

In November and December 2012, Plaintiff underwent objective testing ordered by Dr. Mulligan. The November 2012 x-ray of the right shoulder revealed spurring involving the inferior glenohumeral joint and arthritic changes involving the acromioclavicular joint with hypertrophic spurring and bony erosion. (AR 462). A November 2012 x-ray of the right elbow revealed spurring involving the lateral epicondyle. (AR 462). A November 2012 x-ray of the chest indicated degenerative changes of the spine (AR 479), while an x-ray of the lumbar spine confirmed scoliotic degenerative changes, facet arthritic changes, and endplate osteophytes (AR 481). An electromyogram (EMG) in December 2012 was ordered to identify the source of Plaintiff's back pain and numbness and tingling in the feet. The results revealed diminished amplitude of the right peroneal motor response, borderline left peroneal motor latency, diminished amplitude of the motor potential, denervation of the right in the paraspinal muscles and the right medial gastrocnemius, and diminished motor units in the bilateral legs. The diagnosis from the EMG was right lumbar radiculopathy and neuropathy.

In weighing Dr. Mulligan's opinion, the ALJ states that he credits "some limitation in the right upper extremity" based on the objective evidence and that he does *not* credit Dr. Mulligan's opinion that Plaintiff can only sit for one hour at a time because it is not "supported by the objective evidence." (AR 25). However, the ALJ does not identify what objective evidence supports only "some limitation in the right upper extremity" (an ambiguous term that the ALJ appears to equate

with the ability to lift twenty pounds occasionally and ten pounds frequently in the RFC) as opposed to the limitation of occasionally lifting less than ten pounds imposed by Dr. Mulligan. Nor does he identify what objective evidence does not support the sitting limitation.

This is surprising given that three pages earlier in the decision, (AR 22), the ALJ summarized the tests ordered by Dr. Mulligan, writing: "Due to reports of pain a limited range of motion, [Plaintiff] underwent an x-ray of the right shoulder, which revealed osteoarthritic changes; due to reports of back pain, the claimant underwent an x-ray of the lumbar spine, which showed scoliotic degenerative changes; and due to back pain with numbness and tingling in the feet, she underwent an EMG, which was suggestive of mild right lumbar radiculopathy." (AR 22). At the conclusion of that paragraph, the ALJ carefully explained that these findings were accommodated by the RFC at the light level with no kneeling, crawling, or climbing of ladders, ropes, or scaffolds, only occasionally climbing ramps and stairs, balancing, stooping, and crouching; the avoidance of concentrated exposure to hazards such as unprotected heights; and only frequent use of the dominant, right upper extremity. *Id*.

But nowhere in the section weighing Dr. Mulligan's opinion does the ALJ explain how these objective tests are inconsistent with Dr. Mulligan limiting Plaintiff to only occasionally lifting less than ten pounds and never lifting more than ten pounds or sitting no more than an hour at a time. The ALJ must make the logical bridge between the analysis of the evidence and the conclusions. A vague reference to the "medical evidence" or the "objective evidence" does not constitute that analysis. *See* (AR 25). The ALJ must identify which evidence supports or does not support the treating physician's opinion. *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (citing *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009); *Gudgel*, 345 F.3d at 470).

The Commissioner points to the ALJ's thorough discussion of Plaintiff's consultative examination and the treatment records in 2010 and 2011 to show that the ALJ considered the medical evidence in weighing Dr. Mulligan's opinion. First, as noted above, the ALJ does not make any specific connection between these treatment records and the weight given to Dr. Mulligan's opinion. Second, these records predate Plaintiff's treatment with Dr. Mulligan and the objective tests taken in November and December 2012. The ALJ offers no explanation as to why the earlier treatment records diminish the weight to Dr. Mulligan's more recent opinion that is consistent with Plaintiff's testimony and the objective tests.

The Commissioner also points to Dr. Mulligan's recommendation of conservative treatment consisting of physical therapy and medication with a possible referral to pain management if the those options were not successful. (Def. Resp. 10-11). However, the ALJ does not discuss this aspect of Dr. Mulligan's treatment records either in his recitation of the medical history or the weighing of Dr. Mulligan's opinion. (AR 22, 25). Contrary to the Commissioner's argument, the ALJ did *not* explain that Dr. Mulligan's opinions were inconsistent with and unsupported by her relatively mild objective medical findings and physical examination results and her conservative treatment recommendations. (AR 11). This is the Commissioner's reasoning, not the ALJ's. The ALJ's discussion of the medical record is not a substitute for explaining how that record does or does not support the treating physician's opinion. The Commissioner cannot provide post hoc rationalization for the ALJ's decision. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) ("We are particularly concerned about the *Chenery* violations committed by the government because it is a recurrent feature of the government's defense of denials of social security disability benefits, as this court has noted repeatedly."); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d

346, 348 (7th Cir. 2010). Even if the ALJ had discussed Dr. Mulligan's proposed course of treatment, it is not clear from the record that the course of treatment affects the limitations on Plaintiff's ability to sit, to lift, and to use her right upper extremity. The limitations imposed by Dr. Mulligan appear to be consistent with the objective medical testing and Dr. Mulligan's examination of Plaintiff's arm and shoulder.

Finally, the ALJ does not sufficiently explain the weight given to Dr. Mulligan's opinion that Plaintiff can lift less than ten pounds occasionally. The ALJ recognized this opinion and then found, in the context of weighing Dr. Mulligan's opinion, that the medical evidence supports "some limitation in the right upper extremity." (AR 25). However, the ALJ only limited Plaintiff to lifting or carrying *twenty* pounds occasionally, which kept Plaintiff in the light exertional level. If the ALJ had fully credited Dr. Mulligan's opinion that Plaintiff can occasionally lift and carry less than ten pounds at one time, she would be limited to work at the sedentary exertional level, which would require a finding of disabled based on Plaintiff's age, education, and past work. *See* SSR 83-10; 20 C.F.R. Part 404, Subpart P, App'x 2, § 201.12. Dr. Mulligan's examination results included the observation that Plaintiff's bilateral elbows were tender to palpation and could not be fully extended. These clinical findings along with the objective test results support Dr. Mulligan's lifting limitations. The lack of explanation regarding Plaintiff's lifting limitations is an error requiring remand.

Also troubling is the ALJ's summary notation that "there is no evidence of diabetic retinopathy, or chronic fatigue in the medical evidence." (AR 25). As for chronic fatigue, Dr. Mulligan did not indicate in her opinion that Plaintiff had a *diagnosis* of "chronic fatigue;" rather, Dr. Mulligan listed "chronic fatigue" as a symptom along with the symptoms of multiple joint complaints, especially the right shoulder/elbow. (AR 499). Plaintiff regularly informed her

physicians, including Dr. Mulligan, that she felt tired or fatigued. *See* (AR 416 (4/22/2011), 425 (5/28/2011), 464 (11/2/2012), 503 (11/28/2012), 522 (7/17/2012), 537 (3/14/2012)). The Commissioner notes that, on each of these treatment records, Plaintiff's diabetes was uncontrolled at the time due to skipping meals, inappropriate snacking, a failure to check blood glucose appropriately, failure to count carbohydrates appropriately, and failure to otherwise follow recommended treatment. However, again, the ALJ did not discuss Plaintiff's uncontrolled diabetes as a reason for discounting Dr. Mulligan's recognition of Plaintiff's fatigue as chronic; this reasoning is the Commissioner's alone and, thus, not considered. *See Hanson*, 760 F.3d at 762; *Jelinek*, 662 F.3d at 812; *Spiva*, 628 F.3d ta 348. Dr. Mulligan's comment that one of Plaintiff's symptoms is chronic fatigue is supported by the medical record, and it was error for the ALJ to discount the opinion as a whole on this basis without further discussion or explanation. *Golembiewski*, 322 F.3d at 916 (finding a credibility determination to be compromised by a mischaracterization of the medical evidence).

As for the diabetic retinopathy, Dr. Mulligan listed diabetic retinopathy on her January 2013 opinion as a diagnosis "per her hx." (AR 499). In addition, Dr. Mulligan assessed Plaintiff with diabetic retinopathy at the November 2, 2012 examination and ordered testing. The Commissioner notes that on October 17, 2012, Dr. Serge de Bustros sent a letter to Dr. Ngwayah, Plaintiff's endocrinologist, reporting that there is no evidence of diabetic retinopathy in either eye. (AR 493). But, there is no evidence that Dr. Mulligan was given Dr. de Bustros's report. And, Dr. Mulligan did not include any vision-related restrictions on the January 2013 form, despite the opportunity to do so. More importantly, the ALJ failed to explain why Dr. Mulligan's recitation of a history of this diagnosis, which did not impact the limitations Dr. Mulligan imposed, detracts from Dr. Mulligan's

overall opinion. In fact, the ALJ offers no factual analysis of this issue and does not discuss the October 2012 letter in this context. This statement regarding diabetic retinopathy is not a basis for discrediting Dr. Mulligan's opinion on sitting or lifting.

The Commissioner also argues that the ALJ properly considered the opinion of the state agency reviewing physician, J. Sands, M.D. and gave partial weight to his assessment. On April 1, 2011, Dr. Sands opined that Plaintiff could perform work at the medium exertional level. That opinion was given almost two years before Dr. Mulligan's opinion and did not have the benefit of the objective testing in late 2012. In fact, the ALJ did not give "partial weight" to Dr. Sands' opinion as suggested by the Commissioner but rather gave it "little weight," explaining that the evidence received after Dr. Sands' opinion supports a limitation to light, rather than medium work. (AR 25). The weight given to Dr. Sands' opinion does not rehabilitate the weight given to Dr. Mulligan's opinion.

Finding that an award of benefits is not appropriate in this instance, the Court remands the decision for further consideration of Dr. Mulligan's opinion in light of the other evidence of record not considered by the ALJ. *See Punzio*, 630 F.3d at 710; *Moss*, 555 F.3d at 561; *Bauer*, 532 F.3d at 608.

## B. RFC Determination

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential

evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

Plaintiff contends that the ALJ improperly assessed Plaintiff's RFC in relation to the finding that she could perform the lifting and carrying requirements of light work when the weight the ALJ gave to the physician opinions of record left an evidentiary deficit. As noted in the previous section, the ALJ gave "some weight" to treating physician Dr. Mulligan's January 2013 opinion that Plaintiff could only occasionally lift less than ten pounds and gave little weight to consultative examiner Dr. Sands' April 2011 opinion that Plaintiff could work at the medium exertional level. In addition, the ALJ gave "some weight" to the "medical source statement" of treating endocrinologist Dr. Ngwayah, who opined that Plaintiff could lift five pounds occasionally and no weight frequently.

(AR 25). As a result, the ALJ did not have a medical opinion to support the lifting limitations for light work in the RFC he assigned to Plaintiff.

However, an ALJ is not required to rely solely on medical opinions to determine the RFC. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians (citing *Diaz*, 55 F.3d at 306, n.2)). The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ. *See* 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306, n.2. The problem in this instance, as discussed in the previous section, is that, in discrediting Dr. Mulligan's opinion on lifting, the ALJ did not specify other evidence of record that would support less limitations than imposed by Dr. Mulligan. Similarly, the ALJ does not identify any evidence that supports the light exertional level lifting requirements.

Rather, Plaintiff testified, consistent with Dr. Mulligan's opinion, that she was unable to lift a gallon of milk (which weighs 8.6 pounds) with her right arm and that she was able to lift and carry a gallon of milk with her left arm. She did not testify whether she was capable of carrying or lifting more weight with her left arm. However, as discussed below, the ALJ discredited Plaintiff's testimony as not entirely credible. (AR 24). But the ALJ also does not explain how the objective test results from the x-rays and EMG and Dr. Mulligan's examination findings support the ability to frequently use the right upper extremity as opposed to only occasional use and how Plaintiff was

able to lift and carry up to twenty pounds at a time. The failure to identify an evidentiary basis for the lifting limitation is an error. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The Commissioner is correct that the ALJ discussed Plaintiff's ability to care for her personal hygiene, perform household chores at her own pace, drive, and go to the grocery store, bank, and post office. But again, the ALJ did not explain how these activities supported an ability to lift up to twenty pounds frequently.

As discussed in the previous section, the failure to support the determination of the weight that Plaintiff could lift and carry was not harmless because, as a person closely approaching advanced age with a high school education and whose past work is unskilled, if Plaintiff were found limited to sedentary work, the regulations would have required a finding of disability as of Plaintiff's fiftieth birthday. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.12. Thus, reversal is required for a proper RFC determination of Plaintiff's ability to lift and carry.

Plaintiff also argues that the ALJ erred in the RFC determination by not accounting for Plaintiff's headaches and need to lie down. Unlike in *Myles v. Astrue*, 582 F.3d 558, 563 (7th Cir. 2009), in which the ALJ acknowledged the plaintiff's complaints of fatigue and hand limitations but rejected them without analysis, in this case the ALJ did not discuss Plaintiff's headaches or need to lie down at all. Plaintiff testified that she gets headaches a few times a week that last a day. (AR 83). She also testified that she gets tired during the day and must lie down. *Id.* As discussed in the previous section, Plaintiff did report fatigue to her treating physicians (AR 416, 425, 464, 503, 522, 537). However, there are only two instances of headaches in the medical records, once on January 5, 2011, where "headaches" is checked as "yes" since the previous visit and once on October 17, 2012, when the treatment record from Dr. Ngwayah lists "migraines" under "other illnesses." On

remand, the ALJ is directed to consider Plaintiff's testimony and reports of headaches and fatigue in determining her RFC. *See* SSR 96-8p; *Wolf v. Colvin*, No. 2:12-cv-208, 2013 WL 3777200, at *12 (N.D. Ind. July 18, 2013); *Martinez v. Astrue*, No. 2:09-cv-62, 2009 WL 4611415, at *11-12 (N.D. Ind. Nov. 30, 2009).

## C. Updated Medical Opinion

Plaintiff argues that the ALJ should have obtained an updated medical opinion given that Dr. Sands' consultative examination was in April 2011 and that the ALJ accorded Dr. Sands' opinion little weight. Social Security Ruling 96-6p provides:

> [A]n an administrative law judge and the Appeals Council *must* obtain an updated medical opinion from a medical expert in the following circumstances:
>
> *When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received *that in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *1, 3-4 (July 2, 1996) (emphasis added); *see also Harlin v. Astrue*, 424 F. App'x 564, 568 (7th Cir. 2011).

In this case, additional medical evidence was received after Dr. Sands' opinion, notably the objective test results from November and December 2012 as well as Dr. Mulligan's examination findings. On remand, the ALJ will have the opportunity to determine whether this additional medical evidence may change Dr. Sands' opinion, and if so, to obtain an updated medical expert opinion on equivalence that includes all of the most recent medical findings.

## D. Non-Severe Mental Impairments

Next, Plaintiff contends that the ALJ failed to address limitations relating to Plaintiff's mental impairments. Plaintiff testified that she had trouble thinking straight. (AR 69). In the Adult Function Report that she submitted, Plaintiff averred that she has trouble understanding directions and has to read written directions and instructions several times before comprehending. (AR 276). She reported that she is easily irritated by others and suffers mood swings. At the consultative psychological examination, the psychologist observed that Plaintiff's mood was depressed and that her affect was tearful. (AR 425). The serial sevens examination was discontinued due to Plaintiff's lengthy response time, and Plaintiff was unable to identify the correct number of weeks in a year or the location of London. (AR 426).

At step three, the ALJ determined that Plaintiff's anxiety disorder and depressive disorder produce mild restrictions in activities of daily living, in social functioning, and in concentration, persistence, and pace based on the opinion of the state agency psychologist. (AR 18-19). However, when assessing Plaintiff's RFC, the ALJ did not discuss these mild restrictions or consider whether any work-related limitations were caused by the mild restrictions. The ALJ erred by not discussing these mild limitations in the context of the RFC, and remand is required for that consideration. *See Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see also Winfield v. Astrue*, No. 2:11-cv-432, 2013 WL 692408, at *4 (N.D. Ind. Feb. 25, 2013).

## E. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20

C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)    The individual's daily activities;
(2)    Location, duration, frequency, and intensity of pain or other symptoms;
(3)    Precipitating and aggravating factors;
(4)    Type, dosage, effectiveness, and side effects of any medication;
(5)    Treatment, other than medication, for relief of pain or other symptoms;
(6)    Other measures taken to relieve pain or other symptoms;
(7)    Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff identifies several errors with the ALJ's credibility determination. Because the Court is remanding on other issues, it is unnecessary to determine whether the credibility determination was "patently wrong." Rather, the Court directs the ALJ on remand to consider the following evidence when weighing Plaintiff's credibility: any explanation for Plaintiff's treatment history; the

decision to pursue conservative treatment and whether other more aggressive treatment was an option; and whether there was a plausible explanation for Plaintiff's concurrent receipt of unemployment benefits and application for disability insurance benefits before discounting her credibility on this basis. *See Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010); *Schmidt*, 395 F.3d at 745-46.

## F. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 24th day of September, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT